IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BONNY L.[1],<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:20-CV-575<br>) |
| KILOLO KIJAKAZI[2], Acting<br>Commissioner of Social Security, | )<br>)<br>) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Bonny L. ("Bonny") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Bonny alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her physical residual functional capacity ("RFC") and perform a function-by function analysis; and (2) assess her subjective allegations. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **DENYING** Bonny's Motion for Summary Judgment (Dkt. 18).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Commissioner's conclusion that Bonny failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bonny filed for SSI and DIB benefits in September 2017, claiming that her disability began on May 26, 2016. R. 15.[4] The state agency denied Bonny's claims at the initial and

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Bonny's date last insured was December 31, 2020; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

reconsideration levels of administrative review. R. 73–132. ALJ David Lewandowski held a hearing on August 19, 2019, to consider Bonny's claims for DIB and SSI, which included testimony from vocational expert Barry Hensley. R. 38–71. Bonny was represented by counsel at the hearing. On December 3, 2019, the ALJ entered his decision considering Bonny's claims under the familiar five-step process[5] and denying her claim for benefits. R. 17–31.

The ALJ found that Bonny suffered from the severe impairments of lumbar spondylosis, cervical spondyloarthropathy, obesity, migraines, fracture of the right fibula and calcaneal spur. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21–22. The ALJ concluded that Bonny retained the residual functional capacity ("RFC") to perform sedentary work, but can occasionally climb stairs and balance, and never stoop, kneel, crouch or crawl. The ALJ found that Bonny can frequently perform feeling; and should avoid exposure to vibrations, concentrated exposure to industrial hazards, and exposure to loud noise. R. 22.

The ALJ determined that Bonny was unable to perform her past relevant work as a retail manager, but that she could perform other work that exists in the national economy such as order clerk, inspector, and ampoule sealer. R. 31. Thus, the ALJ concluded that Bonny was not

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disabled. Id. Bonny appealed and the Appeals Council denied her request for review on July 27, 2020. R. 1–6.

## ANALYSIS

### I.  Medical History and ALJ Decision[6]

Bonny was 37 years old on the date of the ALJ's decision. In January 2016, Bonny had low back pain that radiated into her right leg. Bonny quickly exhausted conservative measures, including physical therapy, epidural steroid injections and narcotic pain medication. R. 459, 462, 472, 475, 481. MRIs revealed disc herniation at L4-5 and L5-S1 with impingement of the L5 nerve root and S1 nerve root. R. 459, 542, 545, 463. In October 2016, Bonny had a right-sided L4-5, L5-SI decompressive hemilaminectomy, medial facetectomy, foraminotomy, and discectomy. R. 339.

Bonny followed up with her neurosurgeon, and reported doing well after surgery, no longer having radicular pain, but still complaining of weakness in her lower leg muscles. R. 418. On exam, Bonny had full strength, except for her right lower extremity. Chine S. Logan, D.O., recommended physical therapy. Id. X-rays of Bonny's cervical spine taken on November 4, 2016, showed reversal of normal cervical lordosis and mild degenerative spurring at C5-6 and C6-7. R. 524.

Bonny was in a car accident in December 2016 and visited her family physician the next day complaining of pain in her neck and right shoulder. R. 411. X-rays of Bonny's cervical spine showed multilevel cervical spondyloarthropathy, with no significant interval change from November 2016. R. 518. Likewise, an x-ray of Bonny's lumbar spine showed multilevel

---

[6] Bonny's appeal focuses solely on her physical impairments; thus, I will not address her mental impairments in this opinion.

4

spondylolisthesis, multilevel lumbar spondyloarthropathy and facet arthropathy with no significant interval change from the previous study in May 2016. R. 16–17.

In February 2017, Bonny complained of swelling and pain at the incision site from her previous lumbar spine surgery. R. 402. An MRI revealed fluid collection at L4-L5 through L5-S1, diagnosed as a pseudomeningocele.[7] R. 511. Bonny underwent a second surgery in March 2017 to drain and repair the meningocele. R. 365. Two weeks later, Bonny reported excruciating pain across her lumbar spine, and was given additional pain medication. R. 359.

In April 2017, Bonny reported doing better, and that her pain was well-controlled until the past week when she was "very active working as a pet sitter." R. 354. Bonny noted stiffness and soreness in her lumbar area and bilateral thighs and used a cane. She complained of numbness to her right big toe that comes and goes, but no headaches. Id. On exam, Bonny had full motor strength, intact senses except numbness to right big toe, and a slow steady, slightly antalgic gait with a cane. Id.

In June 2017, Bonny reported tingling up and down her right leg and numbness in the right big toe. R. 349. Bonny reported no headaches, and good gait and balance, although on exam her gait was slightly antalgic. Id. X-rays of Bonny's lumbar spine showed no significant interval change, L4-5 and L5-1 predominant disc narrowing and degenerative changes, with gentle mid-lumbar degenerative dextroscoliosis. R. 490–91.

In July 2017, Bonny complained of worse pain in her lumbar spine and right leg and reported that one day the previous week her back "locked up" and she could not get out of bed.

---

[7] A pseudomeningocele refers to an abnormal collection of cerebrospinal fluid that occurs due to leakage from the CSF-filled spaces surrounding the brain and/or spinal cord as a result of trauma or surgery. https://radiopaedia.org/articles/pseudomeningocele-1?lang=us

R. 344. Bonny began using a cane again for support and could not put much weight on her right leg. Bonny reported that she did not start physical therapy because she is afraid the therapist will make her pain worse. She reported no headaches. Id. MRIs showed spondylotic and discogenic changes, but no significant interval change, disc narrowing at L4-5 and L5-S1 with degenerative changes, and gentle mid-lumbar degenerative dextroscoliosis. R 345. The neurosurgery clinic recommended targeted epidural steroid injections, that Bonny attend physical therapy, and wear a lumbar support band when doing physical activity. R. 344.

In July 2017, Bonny reported to her nurse practitioner that she planned to go back to school for veterinary medicine in the fall and that pet and house sitting are her main source of income. R. 586.

In October 2017, Bonnie reported that she did not have epidural steroid injections, and her right lower extremity pain and numbness is getting better. R. 339. She reported right buttock pain with walking and stairs, but no new weakness. Id. Bonny reported that she has back and neck muscle tightness daily, that muscle relaxants help somewhat, and aqua physical therapy provided some relief. Bonny noted that she does not feel ready to go back to work as a vet nurse as she may have to do heavy lifting and get into awkward positions. Id. On exam, Bonny's gait was steady, her sensation was intact, and she moved all extremities well except her right lower extremity. Dr. Apfel recommended a lumbar support band, heat patches, and acupuncture. She also recommended that Bonny limit heavy lifting, but gradually increase her activity as tolerated. R. 340.

In April 2018, Bonny followed up with Dr. Apfel and reported persistent right big toe numbness, persistent soreness/stiffness in her back with walking and stairs, having several falls over the past few months, intermittent pins and needles feeling in her hands and feet, total

numbness of her right thumb, and chronic neck pain. R. 604. On exam, Bonny moved all extremities well with good power except her right lower leg, her sensation was intact other than numbness in her right thumb and big toe, she rose slowly from a seated position and walked stiffly, leaning forward. R. 605. Dr. Apfel recommended pain management, physical therapy and that Bonny limit her heavy lifting and gradually increase activity as tolerated. Dr. Apfel also found that Bonny can return to work as tolerated. Id.

In June 2018, Bonny fractured her distal fibula after falling down steps, and was placed in an ortho boot and provided crutches. R. 707–09. Bonny followed up with an orthopedist and slowly improved. Bonny graduated from the ortho boot to athletic shoes in September 2018. R. 779. Bonny's gait was steady, her straight leg raising was negative, and she had no motor, reflex or sensory deficits. R. 789.

Bonny visited Vishalakshi Sundaram, M.D. in May 2019, to establish treatment with a new doctor. R. 795. Bonny reported that she naps during the day if she can, walks almost a mile total a day, which helps with her pain. Bonny reported numbness and tingling in both hands, and sciatica in her right leg for 5 months. On exam, Bonny's gait was normal and smooth, she had some tenderness at the L4-5 region, limited range of motion in her midline back with pain, normal strength and normal sensation. R. 797. Dr. Sundaram referred Bonny to physical therapy, and encouraged a moderate level of activity. R. 797–98.

Bonny followed up in July 2019, and reported that she "feels well enough to go back to school in September," and that she had a migraine last week. R. 800. On exam, Bonny had a normal gait, mild tenderness in her L4-L5 region, decreased range of motion in her midline that had improved since her last visit, no pain on lateral rotation and flexion and normal sensation. R. 802. Bonny noted that physical therapy has been helpful. R. 803.

In August 2019, Bonny had a flare up of back pain after doing "quite a bit of cleaning." R. 805. Bonny was hospitalized with intractable lower back and right leg pain. R. 816. An MRI showed a posterior annular fissure and large right lateral recess disc herniation at L4-5 with migration and possible sequestration concentrating the descending right L5 nerve root. R. 817. Bonny was admitted to Lewis Gale Medical Center, treated with pain medication and an epidural steroid injection and discharged three days later. Id.

On February 12, 2018, state agency physician Robert McGuffin, M.D., reviewed Bonny's treatment records and determined that Bonny could lift/carry 20 pounds occasionally and 10 pounds frequently, can stand and walk about six hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, can frequently climb ramps/stairs and balance, and occasionally climb ladders, ropes, scaffolds, stoop, kneel, crouch and crawl. R. 80. Dr. McGuffin noted in support of his finding that Bonny does not have any limitations of her activities of daily living due to migraines; that she has a normal gait and evidence does not indicate that she uses an assistive device to ambulate; she can move all extremities and has normal sensation. R. 81.

Dr. McGuffin reviewed Bonny's records again on June 28, 2018, and further limited her to frequently lifting 10 pounds; standing/walking 2 hours in an 8-hour workday; and sitting 6 hours in an 8-hour workday. R. 109. In support, Dr. McGuffin noted that Bonny has one treatment note observing a stiff and forward leaning gait, along with a long history of spinal pain. R. 110.

At the administrative hearing, Bonny testified that she worked as a pet sitter about once a month over the past year, but would not care for large dogs and avoids heavy lifting. R. 44–45. Bonny testified that she has migraines twice a month, with symptoms of nausea, vomiting, and blurred vision. R. 48. Bonny testified that she previously had prescription medication for her

8

migraines and needed to get a new prescription after changing physicians. R. 49. She testified that she has chronic pain on the right side of her neck that goes down her right arm into her fingers and has a little weakness and tingling in her right hand. R. 49–50. Bonny testified that she has pain on the right-side of her low back that radiates into her right ankle. R. 50–51. Bonny testified that her pain recently worsened, and she was admitted to the hospital a week before. R. 55. Bonny reported that the recent epidural steroid injection did not work, and she expected to have another spinal surgery in the future. R. 56–57. Bonny testified that she can sit for only a few minutes, stand for 10 minutes, uses a cane 5–6 days a month, and would lay down 5–6 hours a day due to pain. R. 58. Bonnie testified that she elevates her legs to avoid swelling and is unsure of her footing when walking. R. 60–62.

The ALJ reviewed Bonny's testimony regarding her impairments and her medical history and treatment records. R. 22–26. The ALJ found that Bonny's impairments could be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with the medical evidence. R. 26.

The ALJ reviewed Bonny's medical treatment and noted that the record does not demonstrate that Bonny consistently used an assistive device at medical appointments. R. 27. Rather, Bonny generally utilized an assistive device only during an exacerbation of pain related to her back or shortly after she broke her fibula. Id. The ALJ also noted that requiring an assistive device for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes does not significantly erode the sedentary base of work.

The ALJ stated,

> [d]ue to the claimant's history of surgery, complaints of back and neck pain, obesity, right fibula fracture, and deficits in gait and range of motion, the undersigned has restricted her to sedentary work with occasional climbing ramps and stairs and balancing, but no stooping, kneeling, crouching, crawling or

9

climbing ladders, ropes, or scaffolds. She must also avoid exposure to hazards and vibrations. Because of her complaints of numbness and tingling in hands, she has been limited to frequent feeling. However, the claimant's [sic] does not require additional limitations, as there is no testing to support her complaints, and her sensation was generally intact in her hands with the exception of one appointment where she had decreased sensation in her right thumb. She can also have no exposure to loud noise, defined as heavy traffic, due to her migraines, which she reported were controlled with medication.

R. 27. The ALJ reviewed the opinion of Dr. McGuffin on reconsideration that Bonny could perform sedentary work with frequently lifting and carrying up to 10 pounds, and found it unpersuasive, "as the claimant requires additional postural, environmental, and manipulative limitations based on her surgical history, objective examination abnormalities, and subjective complaints discussed in more detail above." R. 28. The ALJ noted that Bonny had an antalgic but steady gait, intermittent findings of 4/5 strength in her right lower extremity and reduced range of motion in her lumbar and cervical spine. The ALJ also noted that Bonny reported performing a variety of activities that are inconsistent with disability. R. 29.

The ALJ noted that Dr. Apfel found that Bonny should limit heavy lifting, gradually increase activity as tolerated, and can return to work as tolerated in April 2018. R. 29. The ALJ found this opinion partially persuasive, as it is generally supported by contemporaneous examination noting largely intact strength and sensation with a stiff gait. The ALJ noted that Bonny did not require an assistive device for ambulation at that visit, and she was released to follow up as needed. The ALJ also found Dr. Apfel's opinion consistent with the overall record showing that Bonny had some intermittent gait deficits, but her musculoskeletal examination findings were within normal limits at other times. Id.

## II. Function-by-Function Analysis

Bonny asserts that the ALJ "ignored evidence contrary to his findings in his decision," and specifically failed to note the abnormal x-rays and MRIs of her lumbar and cervical spine

since May 2016. Pl. Br. Summ. J. p. 16. Bonny asserts that the ALJ ignored evidence of her antalgic gait, decreased range of motion, decreased strength, and decreased balance. Id. at 20. Bonny also asserts that the ALJ failed to perform a function-by-function analysis and make specific findings regarding whether her impairments impact her ability to sit, walk, stand, lie down during the day or result in unacceptable absences from work. Id. at 21. Bonny argues that the ALJ failed to evaluate the impact of her migraines on her ability to sustain work activity. Id. at 22.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Mascio v. Colvin, 780 F.3d. 632, 636 (4th Cir. 2015). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) [8]; Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions

---

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184, at *7. The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. Id.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. The ALJ reviewed Bonny's medical records in detail, including the abnormal x-ray and MRI tests of her cervical and lumbar spine. R. 23–26. There is no indication that the ALJ failed to consider evidence relating to Bonny's cervical or lumbar spine and resulting limitations. See Reid v. Comm'r, 769 F.3d 861, 865 (4th Cir. 2014) (explaining "there is no rigid requirement that the ALJ specifically refer to every piece of evidence" in the decision and, "absent evidence to the contrary," a reviewing court should accept an ALJ's statement that the whole record was considered in

12

reaching his or her factual findings.) The ALJ noted Bonny's history of surgery, complaints of back and neck pain, obesity, right fibular fracture, and deficits in gait and range of motion. R. 27. The ALJ reviewed Bonny's medical history and subjective allegations in detail, and provided a detailed and extensive RFC limiting Bonny to a range of sedentary work. Those specific limitations were included in the hypothetical the ALJ posed to the vocational expert, and the vocational expert testified that someone with those restrictions could perform jobs in the national economy. R. 65–69.

The ALJ considered Bonny's ability to walk with and without an assistive device at length, explained why he was limiting her to sedentary work, and specifically delineated her postural restrictions. R. 27. The ALJ limited Bonny to frequent feeling due to complaints of numbness and tingling in her hands. The ALJ also limited Bonny's exposure to loud noise, due to her migraines. Id. The ALJ imposed more restrictive limitations than those suggested by the medical opinions in the record.

Thus, the ALJ provided a narrative discussion explaining his conclusions and the evidence that contradicts the RFC determination, cited specific medical facts and non-medical evidence supporting his conclusion, discussed Bonny's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and described the maximum amount of each work-related activity that Bonny can perform. As noted above, an ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P.

### III. Subjective Allegations

Bonny also asserts that the ALJ improperly discounted her complaints of pain and fatigue based on a lack of objective evidence in the record, citing to Arakas v. Commissioner, 983 F.3d

83 (4th Cir. 2020). Pl. Br. Summ. J. p. 24. Bonny is correct that objective evidence is not required to find a claimant disabled. However, that does not require an ALJ to accept without question a claimant's complaints of disabling pain from impairments that do not always have objective markers.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

14

Substantial evidence supports the ALJ's determinations regarding Bonny's allegations. The ALJ reviewed Bonny's testimony in detail, along with the evidence of record. The ALJ found that Bonny's statements concerning the limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 26. There is extensive objective evidence of Bonny's impairments and associated limitations in the record. The ALJ reviewed this evidence in detail, noting her antalgic gait, positive straight leg raising, and use of a cane. R. 26. The ALJ noted that in November 2017, Bonny reported pet sitting, that her back pain was controlled with ibuprofen, and her migraines were controlled. The ALJ noted Bonny's intermittent complaints of lower extremity pain and numbness, back soreness and stiffness, and falls. The ALJ recognized Bonny's limited daily activities, but also noted statements in the record that she was pet sitting, did not always use a cane, and was walking one mile per day. R. 27.

Bonny's effort to apply <u>Arakas</u> is unavailing in this case. Here, Bonny's physical complaints of pain primarily resulted from her lumbar and cervical spine impairments, both of which are apparent and confirmed by objective testing. These physical impairments are not comparable to conditions such as fibromyalgia, that was at issue in <u>Arakas</u>, and that are not identified through objective testing. In <u>Arakas</u>, the plaintiff experienced pain from a condition that did not create objective findings, and the Fourth Circuit found that the ALJ erred by relying on the absence of such findings to discount the plaintiff's subjective statements. Here, there is a plethora of objective evidence relating to Bonny's back impairments. However, the objective evidence also reflects that Bonny's complaints were intermittent, she did not consistently use an assistive device to ambulate, her gait was sometimes normal and smooth, she had 5/5 strength, and generally intact sensation. The ALJ recognized that Bonny suffered from pain and limited

15

her to sedentary work, with detailed postural and environmental restrictions. The ALJ provided a more restrictive RFC than any recommended by the physician opinions in the record. See Walker v. Saul, No. 2:20-cv-00196, 2021 WL 342570, at *10 (S.D.W. Va. Jan. 6, 2021) ("[T]he ALJ did not discount [c]laimant's subjective complaints based on the lack of objective evidence, but instead properly considered numerous factors, including [c]laimant's daily activities"). Cf. Arakas, 983 F.3d at 97 ("Thus, while the ALJ may have considered other evidence, his opinion indicates that the lack of objective medical evidence was his chief, if not definitive, reason for discounting Arakas's complaints.").

      Bonny also alleges that the ALJ considered her daily activities without acknowledging the extent to which they were performed. Pl. Br. Summ. J. p. 25. This is not a situation like Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017), where the ALJ overly relied upon minimal daily activities in evaluating the claimant's subjective complaints. Here, the ALJ's decision spends little time discussing Bonny's daily activities, noting that she worked as a pet and house sitter, reported walking one mile per day. R. 26–27. The ALJ also acknowledged Bonny's testimony that she needed help on occasion putting on pants and shoes, but could perform personal care, prepare simple meals, perform light household chores with breaks, drive a car and go out alone. R. 23. However, the ALJ pointed to more than Bonny's daily activities to discount her subjective allegations, as set forth above. The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.) Accordingly, I conclude that the ALJ supported his analysis of Bonny's subjective

16

complaints with substantial evidence, and that Bonny can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: January 10, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge